UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| TIM MOREDOCK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 17-cv-0045-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Tim Moredock is an inmate formerly confined at the United States Penitentiary-McCreary in Pine Knot, Kentucky.[1] Proceeding without an attorney, Mr. Moredock filed a civil action against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq*. ("FTCA"). [R. 4.] The United States has filed a motion to dismiss or, in the alternative, motion for summary judgment. [R. 13.] Mr. Moredock has filed two responses [R. 20, 25] and the United States has filed replies to both [R. 23, 26]. Thus, this matter has been fully briefed and is ripe for review.

**I**

In his Amended Complaint, Mr. Moredock alleges that, on October 26, 2015, he was assaulted with a homemade weapon while he was in his housing unit ("Unit A") by an inmate who lived in a different housing unit ("Unit B"). [R. 4 at 2.] He alleges that he was stabbed 68 times. *Id*. The parties do not dispute that the assault occurred, nor that Mr. Moredock's injuries were life threatening. Mr. Moredock was first treated by EMS at USP-McCreary, and then subsequently airlifted to the University of Kentucky Medical Center ("UKMC"), where he

---

[1] Mr. Moredock has since been transferred and is currently confined at the Federal Corrections Institution-Terre Haute in Terre Haute, Indiana

underwent emergency surgery for his injuries. Mr. Moredock spent 21 days at UKMC. [R. 13-1 at 2–3; R. 13-3 at ¶ 5; R. 13-8 at ¶ 4.] The assault was subsequently referred for prosecution. [R. 13-1 at 4.]

According to the United States, while Mr. Moredock was being escorted to the ambulance, he stated to staff that he had been stabbed by the "Soldiers of the Aryan Culture" ("SAC") because he was an SAC member and he had refused an order to stab his cellmate. He further identified two SAC members, identified here as Inmate A and Inmate B for privacy and confidentiality purposes, as his assailants. He stated that Inmate B stabbed him, while Inmate A assisted. [R. 13-1 at 3; R. 13-10 at ¶ 4.]

This information was confirmed by a subsequent investigation, which revealed that Mr. Moredock was assaulted by Inmate A and Inmate B, both of whom belonged to SAC. *Id*. At the time of the incident, Mr. Moredock and Inmate A were both housed in Unit 4A, while Inmate B was housed in Unit 4B. Units 4A and 4B are side by side in separate buildings connected by a Unit Team Area in the middle. However, the unit team remains locked and inmates are not allowed to cross through the Unit Team Area from one unit to the next. [R. 13-10 at ¶ 3.]

According to Wade Thompson, the Captain at USP-McCreary, "[w]hile Moredock was housed at USP McCreary with Inmates A and B, there were no incidents and/or complaints reported between these inmates and/or the SAC. There are no records reflecting that [Moredock] indicated at any time to USP McCreary staff that being housed with Inmate A in Unit 4A, and/or at the same institution as Inmate B, and/or any other SAC members, presented a threat to his safety." [R. 13-10 at ¶ 5.] Thompson further indicates that, had Mr. Moredock reported a verifiable threat of violence to prison staff, immediate action would have been taken to separate the inmates to avoid potential injury, either by moving Mr. Moredock to another Unit, placing

2

him in the Special Housing Unit ("SHU"), and/or giving him the option to enter Protective Custody, including a potential transfer to another institution. *Id*. at ¶ 6. However, prior to the October 26, 2015 assault, "[t]here were no known specific or immediate threats to [Moredock] and there were no known or perceived threats to [Moredock]." *Id*. at ¶ 7.

Mr. Moredock alleges that, after he returned to USP-McCreary from UKMC, a Special Investigative Services ("SIS") officer who was investigating the assault identified the inmate who had stabbed Mr. Moredock, which was when he realized that this inmate was from a different unit. [R. 4.] According to Mr. Moredock, the fact that one of the inmates was from another unit shows that the prison staff failed in their duty to "monitor the unit door and make sure only inmates housed in the unit are allowed in the unit." He further alleges negligence on the part of prison staff for their failure to discover the metal knife during the daily pat-down searches and/or when the inmate passed through the metal detector when he entered the unit door. [R. 4 at 2–3.] In sum, Mr. Moredock alleges that the Bureau of Prisons ("BOP") staff failed in their duties to monitor the unit door and metal detector, which led directly to his stabbing, and, therefore, that they failed to provide a safe environment. *Id.* at 4.

After the assault, Mr. Moredock filed an administrative tort claim (later assigned the designation "TRT-MXR-2016-04050") construed as a Claim for Damage, Injury, or Death dated April 28, 2016.[2] In his claim, he stated that he had been assaulted on October 26, 2015 resulting in serious injuries requiring emergency medical care and attributing the assault to the negligence of the prison staff in failing to adequately monitor the metal detectors, thus permitting Inmate B to enter Unit A with the metal weapon. [R. 4-1.] This claim was denied by the Regional

---

[2] Mr. Moredock actually filed a "Small Claims for Property Damage or Loss" form pursuant to 31 U.S.C. § 3723. However, this was apparently construed as a claim for damage, injury or death. [R. 4-1; R 13-1 at 4.]

3

Counsel. [R. 4-1.] Mr. Moredock then filed this Complaint seeking monetary damages in compensation for his injuries. [R. 4 at 8.]

## II

### A

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Mr. Moredock is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437–38 (6th Cir. 2012).

Here, the United States moved both to dismiss and for summary judgment, attaching and relying upon declarations extrinsic to the pleadings in support of their motion. [R. 13.] Thus, the Court will treat the defendant's motion to dismiss the complaint as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the

4

nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

**B**

Here, Mr. Moredock seeks to recover from the United States pursuant to the FTCA for the alleged negligence of the BOP staff in the performance of their duties relating to surveillance and other security measures, including separating and monitoring inmates, conducting searches, and monitoring the metal detectors. He also alleges that the BOP staff failed to provide a safe environment, implicating 18 U.S.C. § 4042(a), which, among other obligations, requires the BOP to "provide for the safekeeping, care and subsistence" of inmates, § 4042(a)(2), as well as to "provide for the protection" of inmates. § 4042(a)(3). In its motion, the United States argues that Mr. Moredock's negligence claims against it should be dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 2680(a), as these claims relate to discretionary governmental functions and, accordingly, are exempted from the FTCA's limited waiver of the government's sovereign immunity.

Thus, the starting point of the Court's analysis is the FTCA itself. As a sovereign entity, the United States is immune from claims against it. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA constitutes a limited waiver of that immunity, thus permitting suit against the United States for, among other things, personal injuries caused by government employees. 28 U.S.C. § 1346(b)(1). The United States, however, has not waived its immunity for injuries caused by government employees' performance of discretionary acts. 28 U.S.C. § 2680(a); *Montez ex rel. Estate of Hearlson v. United States,* 359 F.3d 392, 395 (6th Cir.2004). Specifically, 28 U.S.C. § 2680(a) provides that the FTCA's waiver of immunity does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a).

A two-part test determines whether a governmental act falls within the discretionary-function exception. "First, a court must ask whether the act involves 'an element of judgment or choice.'" *Montez*, 359 F.3d at 395 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). If the answer to this first question is "yes," the Court must then ask "whether that judgment is of the kind that the discretionary function was designed to shield." *Id*. (quoting *Gaubert*, 499 U.S. at 322–23). Thus, in order to survive a motion to dismiss, a complaint "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id*. at 397 (quoting *Gaubert*, 499 U.S. at 324–25).

6

The Sixth Circuit has recognized that 18 U.S.C. § 4042(a) does not specifically prescribe a course of action for prison officials to follow, but rather "allow[s] BOP officials to exercise judgment when making decisions regarding [prisoner] safety." *Id*. at 396–97. Thus, the first part of the test is satisfied, as "the BOP has discretion to determine how to accomplish its statutory duty to provide for the safety of inmates." *See Parker v. United States*, 2012 WL 2414887 at *3, No. 11-cv-176-ART (E.D. Ky. June 26, 2012) (citations omitted). "Moreover, it is clear that government policy permits this exercise of discretion and was thus designed to shield BOP officials' judgments concerning prisoner safety." *Id*. (citing *Montez,* 359 F.3d at 397). Thus, the decisions made by prison staff in this case regarding the operation of the metal detectors, the utilization of pat-down searches, and the monitoring of the movement of prisoners between units all relate to the exercise of discretion regarding prisoner safety and, accordingly, fall within the discretionary-function exception.

However, as recognized in *Parker*, "no good exception exists without having an exception to it: The discretionary-function exception may not apply where federal officials are aware of a specific and immediate threat to an inmate's safety." *Id*. This is so because, "[i]n such cases, "there is a high likelihood that actions are not based in policy." *Id*. (quoting *Ceballos v. United States,* No. 7:11–21–ART, 2011 WL 5855290, at *3 (E.D.Ky. Nov. 22, 2011)).

Here, there are no allegations in Mr. Moredock's Complaint that, prior to the assault, he faced a specific and immediate threat, much less that the prison officials were aware of this threat. Moreover, the United States submits evidence showing that, prior to the October 26, 2015 assault on Mr. Moredock, there is no record of any specific or immediate threats to him, nor were there any known or perceived threats to him. [R. 13-1 at 4; R. 13-10 at ¶ 7.] Although he admitted to staff after the attack that he had been stabbed by the SAC because he was a

member of SAC and had refused an order to stab his cellmate, according to the United States, there is no record that he advised staff of any potential threat and/or sought protective custody. [R. 13-1 at 24–25.]

In his response to the Motion for Summary Judgment, Mr. Moredock does not dispute that he had never advised the staff at USP-McCreary of any potential threat to his safety. However, he does refer to an incident in 2014 in another prison where Mr. Moredock and another SAC member "jumped on 7 other individuals" and states that one of those individuals was at USP-McCreary. [R. 20 at 2.] Because of this prior incident, Mr. Moredock alleges that officials at USP-McCreary should have never placed him in the yard with this individual. [R. 20 at 2; R. 25 at 1.] However, he failed to raise these allegations previously, either in his Amended Complaint or in his underlying Administrative Tort Claim. [R. 4.] It is generally inappropriate for a party to raise a claim for the first time in response to a motion for summary judgment, particularly where, as here, the facts giving rise to the purported claim (here, that prison officials were negligent in placing him in the yard with a separatee) were known to Mr. Moredock when he filed his complaint. *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 789 (6th Cir. 2005). Moreover, as Mr. Moredock did not raise these allegations in his underlying Administrative Tort Claim, he has failed to exhaust his administrative remedies with respect to this claim, which is required prior to filing a lawsuit. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

However, even putting these deficiencies aside, Mr. Moredock does not allege that the officials at USP-McCreary had knowledge of this 2014 incident, nor that this unnamed individual had any involvement with the assault on him. Indeed, Mr. Moredock offers only conjecture and speculation that the 2014 assault by him and the 2015 on him are connected. [R.

8

20 at 2; R. 25 at 1 ("1-6-2014 I assaulted an inmate (multiple) and Oct. 26th 2015 I was unknowing place on the same yard then I'm assaulted almost killed all the while I should've never been there.").] Moreover, Mr. Moredock does not dispute the evidence offered by the United States that he had not reported to prison staff that he was in any sort of danger from the SAC while housed at USP-McCreary, or that there were any known threats made against him. In addition, the United States has further offered evidence that none of the inmates involved in the assault on Mr. Moredock were separatees and/or were suspected of requiring separation prior to the incident. [R. 13-10 at ¶¶ 5–7.]

For all of these reasons, the Court finds that Mr. Moredock has failed to raise a genuine dispute of fact regarding whether federal officials were aware of a specific and immediate threat to his safety prior to the 2015 assault on him. Because federal officials were not aware of any such threat to him, the discretionary-function exception applies to the decisions made by prison officials with respect to prisoner safety and security in this case. Accordingly, Mr. Moredock's negligence claims must be dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 2680(a).

### III

For the foregoing reasons, the Court finds that it does not have subject matter jurisdiction over Mr. Moredock's negligence claims made pursuant to the FTCA. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant's motion to dismiss or, in the alternative, for summary judgment [**R. 13**] is **GRANTED**;

2. Plaintiff's Amended Complaint [**R. 4**] is **DISMISSED WITH PREJUDICE**;

3. The Court will enter an appropriate judgment; and

4. This matter is **STRICKEN** from the active docket.

This 7th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge